**Exhibit 3**

THE WALLACE WOOD ESTATE
WALLACE WOOD PROPERTIES, LLC
3300 SEGOVIA STREET • CORAL GABLES, FL 33134

March 20, 2013

Tatjana Wood
101 West 74th St., Apt. 5E
New York, NY 10023

      Re:  Wallace Wood last will and testament

Dear Tatjana:

  I'm sorry that we were unable to get together last year when I was in New York. Separate, and in addition, to my respect and goodwill for you; while looking after the Wood Estate interests, whenever possible, it is our desire to be helpful to you. That being said, since taking over from Bill Pearson as Director of the Wallace Wood Estate last year, a matter of some importance has come to my attention that regretfully could put us at odds. I apologize in advance for any upset this letter may cause you, as that is the last thing we would ever want to do. However, as you will recall, while working on the WALLY's WORLD biography and on other visits, I became aware that you have many of Wood's originals — to the best of my recollection 150 to 200 pages, primarily returned art from Marvel. At the time, I had no thought about it other than appreciating their beauty. Since becoming the Director of the Estate, while studying various documents including Wallace's will, it has become clear that The Estate is the rightful and true owner of most of that art you possess, as provided in Wood's last will and testament. However uncomfortable the conversation, I am duty bound to look after such matters with due diligence.

  As Wallace's will provides, you were to receive any bank accounts. All other properties ("All the rest, residue and remainder of my estate, inclusive of but not limited to...") were bequeathed by Wallace to his confidant, friend and executor, John H. Robinson. As per Mr. Robinson, all Wood property has, ever since, been managed as The Wallace Wood Estate and more recently organized as the business entity, Wallace Wood Properties, LLC.

  It is the Estate's understanding that upon your separation and/or divorce, that Wallace left or gifted to you various items including books, records, and the Bucky's Christmas Caper newspaper strip originals. We accept this information in good faith as accurate. The material The Estate has claim to is artwork that was returned by publishers, to Wallace Wood at 101 West 74th St., Apt. 5E, New York, NY 10023 after Wallace moved out. That property was/is rightfully Wallace's and thus, is now, the Estate's. It is clear that Wallace was never notified that it had been mis-delivered to his prior address. As he struggled financially in later years, original art sales became increasingly important to his income. As comics publishers did not tend to return

Tatjana Wood
March 20, 2013
*Page 2*

original art until new policies were developed in the late-1970s and early-1980s, Wallace was not expecting the packages and had no reason to investigate their whereabouts. It is the Estate's understanding, belief and position that, Wallace was denied the ability to claim his property as he was never notified that it was mis-delivered. Perhaps you, like so many, lost contact with Wallace when he moved to California. Maybe the packages didn't arrive until that time. The matter at hand is that neither Wallace nor the Estate were notified that this material was mis-delivered which means the material was not abandoned by Wallace and/or his Estate. The law would consider the material stolen. In such cases any Statute of Limitation seldom applies and tend to be suspended as the courts recognize them as "tolled."

Courts are generally in agreement that any statute of limitations is tolled during a period of concealment of stolen property. See, e.g., *Jackson v. American Credit Bureau, Inc.*, 531 P.2d 932, 936 (Ariz. Ct. App. 1975); *Joseph v. Lesnevich*, 153 A.2d 349, 357 (NJ. Super. Ct. App. Div. 1959); *Reynolds v. Bagwell*, 198 P.2d 215, 217 (Okla. 1948). The suspension of the limitations period continues until the property is held in open and notorious possession. Courts generally place a subsequent possessor with notice of the theft in the same position as the thief, and any concealment by either will suspend the statute. See *also John G. Petrovich, Comment, The Recovery of Stolen Art: Of Paintings, Statues, and Statutes of Limitations, UCLA L. REv. 1122, 1127,* note 28, at 1131-32 n.36 *(1980);* and *O'Keeffe v. Snyder,* 416 A.2d 862, 871. (NJ. 1980).

Again, the Estate has goodwill toward you and there is no animosity between the parties but as the true owner of the property, the Estate must claim it. As we discussed in our last telephone conversation, one of the goals of the Estate is to commemorate the life and works of Wallace Wood. A key interest of ours is to maintain a historic collection of Wood works and artifacts that can be exhibited — someday, perhaps in a permanent Museum (possibly solely devoted to Wood). We would hope that you would be supportive of the fact that Wallace's work, currently in your possession, after safe delivery to the Wood Estate, will help to further his legacy for new generations. As a goodwill offer to settle this matter amicably, the Estate is prepared to pay $50,000.00 to you, in exchange for the safe return of all of The Estate's property. The offer will be retracted, and the funds devoted to representation, if the Estate is forced to secure the Estate's property through a replevin court action.

Thank you,

J. David Spurlock
Director, The WallaceWood Estate
(786) 953-7401 Direct • (908) 391-0937 Cell
www.wallacewoodestate.com