**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| WALLACE WOOD PROPERTIES, LLC, : | CIVIL ACTION NO. 1:14-cv-8597-LTS |
|    A Florida Limited Liability Company : | |
|    3300 Segovia Street : | |
|    Coral Gables, Florida 33134, : | JUDGE LAURA T. SWAIN |
| : | |
|            Plaintiff, : | |
| : | |
|          vs. : | |
| : | |
| TATJANA WOOD, : | JURY TRIAL DEMANDED |
|    An Individual : | |
|    101 West 74th Street, Apt. 5E : | |
|    New York, New York 10023, : | |
| : | |
|          Defendant. : | |

---

### FIRST AMENDED COMPLAINT

Plaintiff Wallace Wood Properties, LLC ("WWP"), by and through its undersigned counsel, files this First Amended Complaint against Defendant Tatjana Wood ("Defendant Wood") to recover its property that is wrongfully and unlawfully in the possession of Defendant Wood. In support thereof, WWP alleges as follows:

### PARTIES

1.    Plaintiff WWP is limited liability company organized on December 22, 2011 under the laws of the state of Florida with a principal place of business at 3300 Segovia Street, Coral Gables, Florida 33134. The sole member of WWP is J. David Spurlock ("Spurlock") who resides in Florida.

2.    Defendant Wood is an individual who resides at 101 West 74th Street, Apt. 5E, New York, New York 10023.

## JURISDICTION AND VENUE

3.      Diversity Jurisdiction is proper pursuant to Title 28 U.S.C. § 1332(a)(1) as this is an action between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4.      Venue is proper in this District pursuant to Title 28 U.S.C. § 1391(b)(1) & (2) because Wood is a resident of this District and the property that is the subject of the action is situated in this District.

5.      Venue is also proper in this District pursuant to N.Y. CPLR § 508 because the chattel to be recovered is situated in this District.

## FACTUAL BACKGROUND

6.      Wallace Wood (a.k.a Wally Wood) was an American comic book writer, illustrator and publisher who is well known for his work on EC's Comics' "Mad Magazine" and Marvel Entertainment, LLC ("Marvel") "Daredevil" comic books.

7.      Wallace Wood's first wife was Defendant Wood.

8.      Wallace Wood and Defendant Wood were divorced sometime in the 1960's.

9.      Wallace Wood remarried twice after the end of his marriage to Defendant Wood.

10.      Wallace Wood was a prolific comic book writer, illustrator and publisher.

11.      Wallace Wood died on November 2, 1981 in California and bequeathed all of his money and assets through a Last Will and Testament (the "Will").  A true and correct copy of the Will is attached as Exhibit 1.

12. The Will provides that "[a]ll bank accounts, whether savings, checking, Certificates of Deposit, or otherwise," are bequeathed "to [his] first wife, TATJANA WOOD." *See* Exhibit 1, ¶ A.

13. The Will also provides that "[a]ll the rest, residue and remainder of [his] estate, inclusive of but not limited to, all furniture, equipment, jewelry and royalty rights for all writings ***and art work***, whether published or unpublished" are bequeathed "to [his] friend, JOHN H. ROBINSON." *See* Exhibit 1, ¶ B (emphasis added).

14. John H. Robinson ("Robinson") was a close personal friend of Wallace Wood who helped the artist in his later years.

15. By virtue of Wallace Wood's Will, John H. Robinson became the owner of all original artwork created by Wallace Wood during his lifetime that is not subject to a written agreement explicitly providing otherwise, that is, all original artwork owned by Wallace Wood at the time of his death.

16. On February 23, 2012, Robinson – the Executor and Residual Beneficiary of the Will – assigned all of his interest in "***the work***, property, copyrights, trademark rights and royalties attributed to or due to the said Wallace Wood and/or his estate to Wallace Wood Properties, LLC [ . . . ]". A true and correct copy of the Agreement of Assignment is attached as Exhibit 2 (emphasis added).

17. The Agreement of Assignment was and is a legally binding, enforceable agreement supported by sufficient consideration.

18. As of February 23, 2012, WWP became the owner of all original artwork created by Wallace Wood during his lifetime that is not subject to a written agreement explicitly providing otherwise and thus owned by Wallace Wood at the time of his death.

3

19. WWP is a legal entity that was established on December 22, 2011 to manage the tangible properties, including but not limited to Wallace Wood's original artwork, and intellectual property rights related to Wallace Wood's artwork.

20. WWP is dedicated to furthering Wallace Wood's legacy through exhibits, education, publications and more, including potentially opening a Wallace Wood museum.

21. J. David Spurlock is the sole member and manager of WWP.

22. Spurlock first saw Wallace Wood's Will in 2012 in connection with the execution of the Agreement of Assignment with Robinson.

23. When Spurlock reviewed Wallace Wood's Will, he realized for the first time that WWP actually owned all original Wallace Wood artwork that is not subject to a written agreement explicitly providing otherwise, and that Defendant Wood was improperly in possession of approximately 150-200 pages of original artwork created by Wallace Wood (the "Original Artwork").

24. Defendant Wood admits that the Original Artwork was "illustrated" and "drawn" by Wallace Wood.   *See* Dkt. No. 10, p. 1, ¶¶ 2-3.

25. Although Spurlock first saw the Original Artwork in Defendant Wood's residence in or around 2006 when he was working on a biography of the life of Wallace Wood called "Wally's World," he was then unaware that it all actually belonged to Robinson via the Will.

26. Upon information and belief, Wallace Wood never sent, gave, gifted, sold or otherwise conveyed any Original Artwork to Defendant Wood and no written agreements exist between Wallace Wood and Defendant Wood regarding ownership of the Original Artwork, which she possesses.

4

27.    Before February 23, 2012, WWP had no rights in or to the Original Artwork and Spurlock had not seen Wallace Wood's Will, which made clear that the Original Artwork did <u>not</u> belong to Defendant Wood, but rather to Robinson.  *See* Exhibit 2.

28.    Spurlock could not have made a "demand" to Defendant Wood on behalf of WWP for the "return" of the Original Artwork until, at the earliest, February 23, 2012 when WWP first acquired the rights to all of Wallace Wood's original artwork from Robinson, including the Original Artwork that Defendant Wood showed to Spurlock in 2006.

29.    WWP did not have any duty to search for the Original Artwork until, at the earliest, February 23, 2012, when WWP first acquired the rights to all of Wallace Wood's Original Artwork from Robinson.

30.    WWP's predecessor in interest, Robinson, did not know that Defendant Wood was improperly in possession of any of Wallace Wood's Original Artwork and, therefore, did not make any demand to Defendant Wood to return the Original Artwork.  A true and correct copy of the Declaration of John H. Robinson is attached as Exhibit 3.

31.    Upon information and belief, Robinson – as Executor and Residual Beneficiary to the Estate of Wallace Wood – conducted a reasonable investigation into the whereabouts of Wallace Wood's assets, including his Original Artwork, while probating Wallace Wood's Estate, but did not discover the Original Artwork.  *See* Exhibit 3.

32.    Defendant Wood admits that she did not receive the Original Artwork until 2005 and subsequently concealed the fact that she possessed it.

33.    Wallace Wood created, authored and owned his Original Artwork.

34.    Wallace Wood owned each and every page of Original Artwork that he drew that is not subject to a written agreement providing otherwise.

35.     Upon information and belief, Wallace Wood purchased his own paper, ink, paintbrushes and all other art supplies that he used to create the Original Artwork.

36.     Upon information and belief, Wallace Wood created his Original Artwork in his personal studio.

37.     Upon information and belief, Wallace Wood hired his own assistants who played a supporting role in helping Wallace Wood create Original Artwork.

38.     The Original Artwork is crucial to WWP's plan to create a permanent exhibit or museum comprised of Wallace Wood art.

39.     Upon information and belief, the Original Artwork created by Wallace Wood is valued between $2,000 and $35,000 per page.

40.     Upon information and belief, some if not all, of the Original Artwork that is in the possession of Defendant Wood is art that Wallace Wood created for Marvel comic books.  A true and correct copy of a List of Wallace Wood artwork created for Marvel is attached as Exhibit 4.

41.     Upon information and belief, Marvel improperly sent the Original Artwork to Defendant Wood in or around 2005.

42.     Upon information and belief, Defendant Wood had knowledge of the terms of the Will because she was a named, specific Beneficiary of certain bank accounts and likely received a copy of the Will during Probate.  *See* Dkt. No. 9 at Exhibits A & B.

43.     At no time did Defendant Wood, or anyone representing her, contact Robinson, Spurlock, or any representative of the residual estate or WWP, to indicate that she was in possession of some of Wallace Wood's Original Artwork that was owned by Wallace Wood at his death, and bequeathed to Robinson, and later transferred to and now owned by WWP.

44.    Wallace Wood was never Marvel's employee and did not exclusively create artwork for Marvel.

45.    Over the course of the relationship that Wallace Wood had with Marvel, he sent certain physical original artwork to Marvel, including some, if not all, of the Original Artwork at issue in this lawsuit.

46.    Upon information and belief, it was Wallace Wood's intent to transfer possession only (thus creating a Bailment) Original Artwork to Marvel for the sole purpose of allowing Marvel to replicate the drawings represented in comic books sold by Marvel.

47.    Upon information and belief, Wallace Wood did not intend to transfer any title or ownership in and to the Original Artwork by sending the Original Artwork to Marvel, all of which remained with him.

48.    Marvel knew that Wallace Wood was sending the Original Artwork to Marvel for the sole purpose of using the drawings contained therein to create comic books.

49.    Marvel knew that Wallace Wood had no intention of conveying any title or ownership in and to the Original Artwork to Marvel by sending the drawings to Marvel.

50.    Wallace Wood's transfer of the Original Artwork to Marvel created a Bailment, wherein Wallace Wood was the Bailor and Marvel was Bailee.

51.    At all times relevant hereto, prior to turning the Original Artwork over to Defendant Wood, Marvel rightfully possessed the Original Artwork as a Bailment.

52.    At the time when Wallace Wood sent the Original Artwork to Marvel, Marvel had no intention of appropriating or owning the Original Artwork.

53.    Marvel's conduct at the time the Original Artwork was sent evidences that it had no present intent to take ownership the Original Artwork.

54.    Upon information and belief, at no time did Marvel pay any state, local or federal sales tax on the Original Artwork and did not insure the Original Artwork when it was received from Wallace Wood.

55.    Upon information and belief, Wallace Wood did not sign any written agreements with Marvel regarding ownership of the Original Artwork.

56.    Presumably, if Marvel had intended to own the Original Artwork, it would have expressly contracted with Wallace Wood for that right.

57.    Additionally, Marvel's policies and course of dealing with other artists' similar original artwork evidences that Marvel had no present intent to own any Original Artwork of Wallace Wood or any other similar artists.

58.    In the 1970's, Marvel began cataloguing and returning the original artwork that was stored in Marvel's warehouse to its artists and/or the rightful owners.

59.    Upon information and belief, it is Marvel's longstanding policy to return original artwork to the artist or owner of the original artwork.

60.    Upon information and belief, Marvel has never adopted a policy of returning original artwork to an artist's first of three wives who is not named in his Will as a Beneficiary to the original artwork.

61.    Marvel's policy concerning the return of original artwork comports with the comic book industry's well-established practice and custom of returning original artwork to its artist or owner.

62.    Upon information and belief, Wallace Wood and Marvel agreed that they were creating a Bailment of his Original Artwork for the purpose of conveying his drawings to Marvel in order for Marvel to create comic books.

63.     Wallace Wood delivered the Original Artwork to Marvel.

64.     Marvel accepted the exclusive and lawful control and possession of the Original Artwork.

65.     At all times during the Bailment of the Original Artwork, Wallace Wood retained all title and ownership in and to Original Artwork.

66.     Marvel had a duty to Wallace Wood, then to Robinson and then to WWP to exercise care in protecting the Original Artwork.

67.     Marvel had a duty to Wallace Wood, then to Robinson and then to WWP to account for the Original Artwork as property owned by another.

68.     Marvel received significant consideration in exchange for the Bailment of the Original Artwork in the form of Wallace Wood's permission to use the images and drawings expressed in the Original Artwork in its comic books, which were incredibly popular and lucrative for Marvel.

69.     Once Marvel obtained possession of the Original Artwork and Wallace Wood's images and drawings from the Original Artwork, Marvel should have returned the Original Artwork to the rightful owner at the time (*i.e.* Wallace Wood, then Robinson and then WWP).

70.     Upon information and belief, Marvel took no steps whatsoever inconsistent with a Bailment of the Original Artwork, until it improperly and inexplicably sent the Original Artwork to Defendant Wood in or about 2005, despite the fact that appropriate due diligence by mega-corporation Marvel would have disclosed that the first divorced ex-wife of Wallace Wood had no right to the Original Artwork and Robinson then did.

71.     Upon information and belief, Marvel took no steps whatsoever consistent with a claim of ownership by Marvel to the Original Artwork.

72.     Marvel erroneously, by mistake of fact or law and/or erroneous legal advice, turned over possession of the Original Artwork to Defendant Wood, which turnover was wrongful.

73.     Instead of returning the Original Artwork to its rightful owner (Wallace Wood, then Robinson, and then WWP), Marvel breached the terms of the Bailment and sent the Original Artwork to the first of Wallace Wood's three wives, Defendant Wood.

74.     No one but Marvel and Defendant Wood knew of the change in possession of the Original Artwork from Marvel to Defendant Wood.

75.     Neither Marvel nor Defendant Wood made any attempt to give notice to Robinson or anyone else of the impending change in possession and/or the actual change in possession.

76.     The transfer of possession of the Original Artwork from Marvel to Defendant Wood was an entirely private transaction not authorized by Wallace Wood, the Estate of Wallace Wood or Robinson and in violation of the Bailment of same to Marvel.

77.     Defendant Wood paid nothing to Marvel for the Original Artwork and thus will suffer no prejudice by its return to its rightful owner, WWP.

78.     Upon information and belief, Defendant Wood and all Marvel representatives knowledgeable of the transfer of possession are alive and well and Marvel and Defendant Wood possess any documents relevant thereto, even though they continue their fraudulent concealment by refusing to disclose same.

79.    Defendant Wood is not a good faith purchaser or thief of the Original Artwork, but she is a mistaken, wrongful current possessor of same.  At best, she is a mistaken or ill-informed purported donee, possessing same in bad faith.

80.    While Wallace Wood and Robinson may never have demanded return of the Original Artwork from Marvel, such was/is not required by law of a Bailment.  Marvel at all times had/has the legal obligation to retain and protect the chattels subject to the Bailment.  And, as far as Wallace Wood or his Estate knew, at all times did.

81.    If Marvel takes the position in Discovery that <u>it</u> was the owner of the Original Artwork, Marvel will have to be added as a Necessary Party.  *See* Fed. R. Civ. P. 19.

82.    Marvel never had any ownership interest in the Original Artwork and, therefore, had no interest to convey to Defendant Wood, by gift, sale or otherwise.

83.    While Defendant Wood is not the legal or rightful owner of the Original Artwork, WWP does <u>not</u> allege that she "stole" the Original Artwork from Wallace Wood, the Estate of Wallace Wood, Robinson, Marvel or anyone else.

84.    Defendant Wood is <u>not</u> a "thief" of the Original Artwork, <u>but</u> she <u>is</u> in wrongful (civil) possession of the Original Artwork.

85.    Upon information and belief, Defendant Wood took no steps whatsoever inconsistent with a Bailment of the Original Artwork to Marvel, until she first rejected WWP's demand for return of same on May 7, 2013.

86.    Upon information and belief, Defendant Wood took no steps whatsoever consistent with a claim of a gift of the Original Artwork by Marvel to her.

87.    Upon information and belief, at no time did Defendant Wood pay any local, state or federal gift or other taxes on the Original Artwork.

88.     At all times relevant hereto, Defendant Wood knew that the actual owner of the Original Artwork was <u>not</u> Marvel, <u>not</u> her and indeed was Wallace Wood and then Robinson and then later WWP.

89.     At all times relevant hereto, Defendant Wood fraudulently concealed the identity, location and possession of the Original Artwork from the Estate of Wallace Wood, its Executor and Residual Beneficiary, Robinson and ultimately WWP.

90.     Upon information and belief, <u>if</u> it is found that Marvel actually purchased the Original Artwork from Wallace Wood, Marvel is in substantial debt to taxing authorities for sales and other taxes for same.

91.     If it is found that Marvel gifted the Original Artwork to Defendant Wood, upon information and belief, Marvel and/or Defendant Wood owe substantial gift tax to the local, state and/or federal authorities on same.

92.     Upon information and belief, neither Marvel nor Defendant Wood possess any documents or other physical things evidencing title, gift, sale or ownership of the Original Artwork.

93.     At all times relevant hereto, Marvel and/or Defendant Wood committed civil wrongs, in that Marvel wrongfully turned possession of the Original Artwork over to Defendant Wood and Defendant Wood wrongfully and fraudulently concealed and retained the Original Artwork.

94.     At all times relevant hereto, both Marvel and Defendant Wood have admitted that she is in possession of the Original Artwork which consists of "valuable comic book art," and "original drawings by Wally Wood" which is the subject of this Conversion and Replevin action.  *See* Dkt. No. 10, p. 1, ¶¶ 2-3; p. 11.

95.     The deception and concealment by Marvel and Defendant Wood continues to date in connection with this Action.

96.     After WWP became the owner of all residual portions of the Estate of Wallace Wood's in February 2012, Spurlock sent a first letter to Defendant Wood on behalf of WWP demanding that any Original Artwork be returned to WWP, its rightful owner.  A true and correct copy of the first letter sent by Spurlock dated March 20, 2013 is attached as Exhibit 5.

97.     Spurlock met with Counsel for Defendant Wood to discuss return of the Original Artwork on May 7, 2013.

98.     During that meeting, for the first time, Counsel for Defendant Wood explained that Defendant Wood refused WWP's demand for the return of the Original Artwork.

99.     Having received no further communication from Defendant Wood about the Original Artwork, Spurlock sent a second letter to Defendant Wood, which renewed his demand that all Original Artwork authored by Wallace Wood be returned to its rightful owner, WWP.  A true and correct copy of the second letter sent by Spurlock dated October 3, 2013 is attached as Exhibit 6.

100.     WWP received a response from Defendant Wood's Counsel reiterating her initial refusal to return the Original Artwork.  A true and correct copy of the email sent by Defendant Wood's Counsel dated October 7, 2013 is attached as Exhibit 7.

101.     Prior to Spurlock's demands on March 20, 2013 and October 3, 2013, no demand for the return of the Original Artwork was ever made by Wallace Wood, Robinson, WWP or anyone else.

102.     There was no unreasonable delay in WWP's investigation of the whereabouts of the Original Artwork or the filing of this lawsuit.

103.    Spurlock and Counsel for Defendant Wood were in discussions from the date of Spurlock's first letter (March 20, 2013) and exchanged correspondence over time about the potential resolution of this matter.  Those discussions were ultimately not fruitful.

104.    After those discussions proved unsuccessful, WWP retained Counsel in early 2014 to engage in further discussions with Counsel for Defendant Wood.

105.    When those discussions also failed, WWP filed the instant lawsuit on October 28, 2014.

106.    There was no unreasonable delay in WWP's demands that Defendant Wood return the Original Artwork.

107.    After several demands to return the Original Artwork, which were met with Defendant Wood's baseless refusals, WWP learned that Defendant Wood was auctioning and trying to sell some of the Original Artwork, while continuing to conceal its provenance from the auction house and potential buyers.

108.    Upon information and belief, even after WWP's demands and even after this lawsuit was filed, Defendant Wood has auctioned off numerous pages of the Original Artwork dating from November 22, 2013 to November 21, 2014.  A true and correct copy of the recent auctions of Original Artwork are attached as Exhibit 8.

109.    Upon information and belief, each and every piece of Original Artwork identified in Exhibit 8 is Original Artwork that Defendant Wood obtained possession of and sold, despite knowing that WWP is the rightful owner of the Original Artwork.

110.    The Original Artwork at issue in this litigation is each and every piece of Original Artwork that was created, authored or drawn by Wallace Wood that is now or ever was in the possession, custody or control of Defendant Wood, after the death of Wallace Wood,

including but not limited to some or all of the Original Artwork created for Marvel identified in Exhibit 4 and all of the auctioned Original Artwork identified in Exhibit 8.

111.    WWP cannot and has no obligation to list each and every page of Original Artwork that Defendant Wood possessed, or currently possesses, by name or by description.

112.    Despite requests, Defendant Wood has continued her fraudulent concealment by refusing to provide an Inventory of the Original Artwork.

113.    Defendant Wood herself and her Counsel surely understand and can identify the universe of Wallace Wood Original Artwork that she had, or currently has, in her possession, but they refuse to do so.

114.    Upon information and belief, the pages of Original Artwork are kept in Defendant Wood's personal residence and she can easily specifically identify the Original Artwork at issue in this litigation without leaving her own home.

115.    In fact, Defendant Wood sold two (2) pieces of Original Artwork to Spurlock in or around 2010.

## COUNT I – CONVERSION

116.    WWP incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

117.    The specifically identifiable property that was converted by Defendant Wood is the Original Artwork described in detail above.

118.    WWP owns, controls and has the right to possess the Original Artwork by virtue of the Will and Agreement of Assignment.

119.    Defendant Wood wrongfully obtained and knowingly remains in wrongful possession of WWP's Original Artwork, which demonstrates a willful, reckless and intentional disregard of WWP's rights.

120.    By retaining wrongful possession of WWP's Original Artwork, Defendant Wood has willfully, recklessly and intentionally interfered with WWP's dominion and control over the Original Artwork, without WWP's consent, authorization and/or lawful justification, resulting in the deprivation of use and possession to which WWP is exclusively entitled.

121.    Defendant Wood's intentional interference with WWP's dominion and control over the Original Artwork is inconsistent with WWP's rights.

122.    WWP first demanded that the Original Artwork be returned on March 20, 2013, but Defendant Wood refused that demand at a meeting on May 7, 2013.

123.    WWP again demanded that the Original Artwork be returned on October 3, 2013, but Defendant Wood refused that demand via electronic mail dated October 7, 2013.

124.    WWP has been damaged by Defendant Wood's wrongful possession of and/or failure to relinquish the Original Artwork.

## COUNT II – REPLEVIN

125.    WWP incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

126.    The specifically identifiable property that was converted by Defendant Wood is the Original Artwork described in detail above.

127.    WWP owns, controls and has the right to possess the Original Artwork by virtue of the Will and Agreement of Assignment.

128.    Because Defendant Wood has no rights relating to the ownership, control or possession of the Original Artwork, WWP has superior rights over Defendant Wood to own, control and possess the Original Artwork.

129.    Defendant Wood wrongfully obtained and knowingly remains in wrongful possession of WWP's Original Artwork.

130.    By retaining wrongful possession of WWP's Original Artwork, Defendant Wood has willfully, recklessly and intentionally interfered with WWP's dominion and control over the Original Artwork, without WWP's consent, authorization and/or lawful justification, resulting in the deprivation of use and possession to which WWP is exclusively entitled.

131.    Defendant Wood's intentional interference with WWP's dominion and control over the Original Artwork is inconsistent with WWP's rights.

132.    WWP first demanded that the Original Artwork be returned on March 20, 2013, but Defendant Wood refused that demand at a meeting on May 7, 2013.

133.    WWP again demanded that the Original Artwork be returned on October 3, 2013, but Defendant Wood refused that demand via electronic mail dated October 7, 2013.

134.    WWP is entitled to immediate possession of the Original Artwork.

WHEREFORE, WWP demands judgment in its favor and against Defendant Wood, and is entitled to the following relief:

a.    that Defendant Wood be enjoined and restrained from removing from the state, transferring, selling, auctioning, pledging, assigning, or otherwise disposing of the Original Artwork until further Order of this Court because the Original Artwork is unique chattel;

b.    that WWP be adjudged the owner of the Original Artwork and be entitled to immediate and exclusive possession and control of the Original Artwork;

c.    that any Original Artwork in the possession of Defendant Wood be immediately returned and delivered to WWP;

17

        d.      that Defendant Wood be ordered to cooperate fully with WWP and its representatives and agents, together with the law enforcement authorities, to facilitate the orderly Replevin of the Original Artwork, whether in her possession or in the possession of any third party, including but not limited to making a full Accounting and Inventory of all Original Artwork;

        e.      Compensatory Damages (plus Interest), Punitive Damages, Pre- and Post-Judgment Interest, and Costs; and

        f.      that this Court grant such further relief as it deems just and necessary under the circumstances.

Dated: <u>January 5, 2015</u>               Respectfully submitted,

                                   PEPPER HAMILTON LLP

                   By:   <u>/S/  Jena L. Tiernan</u>
                        Jena L. Tiernan
                        The New York Times Building
                        37th Floor
                        620 Eighth Avenue
                        New York, New York 10018-1405
                        Tel: 212.808.2732
                        Fax: 212.286.9806
                        Email:  tiernanj@pepperlaw.com

                        and

                        M. Kelly Tillery, Esq.[1]
                        Megan M. Kearney, Esq.[1]
                        PEPPER HAMILTON LLP
                        3000 Two Logan Square
                        Eighteenth and Arch Streets
                        Philadelphia, PA 19103-2799
                        Tel:  215.981.4000

---

[1] *Pro Hac Vice* applications to be submitted.

Fax:  215.981.4750
Email: tilleryk@pepperlaw.com
Email: kearneym@pepperlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Jena L. Tiernan, hereby certify that on January 5, 2015, I served a true and

correct copy of the First Amended Complaint via the ECF filing system on the following:

Joel L. Hecker, Esq.
Russo & Burke
600 3rd Avenue, 15th Floor
New York, New York 10016

*Attorney for Defendant,*
*Tatjana Wood*



/S/  Jena L. Tiernan
Jena L. Tiernan